[McGhee *et al.* Receivers, v. Willis, Admr.]

# McGhee *et al.* Receivers, *v.* Willis, Admr.

*Action against Receiver of Railroad Company to recover Damages for Negligent Killing of Employe.*

1. *Action for negligent killing of employe; plaintiff's appointment as administrator can not be questioned by plea.*—In an action by an administrator to recover damages for the alleged negligent killing of his intestate, the validity of the plaintiff's appointment as administrator of the deceased can not be collaterally questioned by a plea on the ground that the decedent was not a resident of, and left no estate, in the county where the letters of administration were issued.

2. *Same; discharge of receivers of railroad bar to recovery in a suit against them.*—In an action against the receivers of a railroad company to recover damages for the negligent killing of plaintiff's intestate, a plea which sets up that since the commencement of said suit the defendants had been fully and finally discharged from their receivership by the court which appointed them, and had turned over to their successors, another railroad company, all property which they held as such receivers, presents a good defense to the further prosecution of the action; and a demurrer to such plea, on the ground of its insufficiency as a defense, should be overruled.

3. *Action for negligent killing of employe; sufficiency of plea.*—In an action by an administrator against the receivers of a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, where the complaint avers that the intestate was employed by the defendants as yard master, and that he was required, in connection with his other duties, to couple and uncouple cars and that the injury was caused while uncoupling cars by reason of the negligence of the engineer, a plea which avers that at the time of the injury which caused his death, the plaintiff's intestate "was not in the discharge of his duties as yard master, but was performing the duties of a brakeman in coupling and uncoupling cars, and he thus proximately contributed to cause his death," is bad and subject to demurrer.

4. *Action for negligent killing; contributory negligence; general*

[McGhee *et al.* Receivers, v. Willis, Admr.]

*affirmative charge in favor of defendant.*—In an action against a railroad company to recover damages for the killing of his intestate, caused by the alleged negligence of the defendant's engineer, where it is shown that the plaintiff's intestate was killed while uncoupling cars, which was one of his duties, the general affirmative charge requested by the defendant, on the theory of contributory negligence, should not be given even though the plaintiff's intestate was negligent in being in the position he occupied when injured, where it is open to the jury to find that the engineer was guilty of such negligence in moving his engine or allowing it to be moved so as to bring the cars together, knowing that the plaintiff's intestate was between them, and that he had a right to assume that the engineer would keep his engine stationary while he was so between said cars.

5. *Action for negligent killing; measure of damages.*—In an action to recover damages for the alleged negligent killing of plaintiff's intestate, where it is shown that at the time he was injured the plaintiff's intestate was an unmarried man, the damages recoverable are to be determined by the jury ascertaining the value of the plaintiff's intestate's life to the distributees of his estate from a consideration of his life expectancy, health, strength, earning capacity, etc., and from all the circumstances, capacities and characteristics of his life, as it existed up to the time of the mortal injury.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. J. A. BILBRO.

This was a suit brought by the appellee, L. W. Willis, as administrator of J. W. Legg, deceased, against the appellants, C. M. McGhee and Henry Fink as receivers of the Memphis & Charleston Railroad Company, under the employer's liability act, to recover for the alleged wrongful killing of plaintiff's intestate at Stevenson, Ala., on December 13, 1894, it being alleged in the complaint that the plaintiff's intestate was the yard master in the defendant's employment at that time, and that his death was caused by reason of the negligence of the engineer in charge of the engine operated by the defendants, as such receivers.

The complaint, as amended, contained six counts. The 3d, 4th, 5th and 6th counts were eliminated by the court giving the general affirmative charge in favor of

the defendant as to some of them and the withdrawal of the others by the plaintiff. In the counts of the complaint upon which the cause was tried the plaintiff sued in his representative capacity as the administrator of the estate of John W. Legg, deceased, and claimed damages from the defendants as receivers of the Memphis & Charleston Railroad Company, and averred their regular appointment as receivers of said railroad company by orders of the circuit court of the United States for the Western District of Tennessee and the Northern District of Alabama, and that at the time of the injury complained of, they were operating said railroad and engaged in the business of transporting freight and passengers over said line of railroad, and were using locomotives and cars for such purpose. It was further averred in said counts of complaint that John W. Legg, the plaintiff's intestate, was employed by the defendants as yard master at Stevenson and was required, in connection with other duties, to couple and uncouple the cars run and operated on said road by the defendants; that on December 13, 1894, while the defendants, through their agents and servants, were engaged in putting cars loaded with coal upon a side track at a coal chute upon said road, the plaintiff's intestate in the discharge of his duty went between two of said cars to uncouple them, and that after having uncoupled said cars, the engineer, one Jasper Potts, in charge of said engine, pulled said cars apart, and thereupon, while plaintiff's intestate was still between said cars in the performance of his duty, the said engineer negligently or carelessly drove or pushed said cars, which had been so uncoupled together, and plaintiff's foot was caught between them and he was so injured that he died from the effects thereof. It was then averred that the cause of the plaintiff's intestate's death was the negligence of the engineer, Potts, in driving said cars together upon the plaintiff's intestate.

The defendant pleaded the general issue and set up by special pleas the contributory negligence of the plaintiff's intestate. The defendant also pleaded the following special pleas: "4th. For further special plea

defendants say: Said J. W. Legg, at the time of his death (which occurred in Jackson county, Alabama) was not an inhabitant of said county and left no assets in said county at the time of his death, and none were afterwards brought into said county prior to the grant of administration. Said letters of administration upon his estate, if granted at all, were granted by the probate court of Jackson county, Alabama, which had no jurisdiction to grant the same, wherefore said grant of administration to L. W. Willis is void and he is not the administrator of the estate of said Lee, deceased.

"5th. For further plea and answer to the complaint and each count thereof separately. defendant says: that since the institution of this suit, the defendants have been fully and finally discharged from their receivership by the court which appointed them, namely, the circuit court of the United States for the Western Division of the State of Tennessee, and the circuit court of the United States for the Northern Division of the Northern District of Alabama, and have turned over to the Southern Railway Company, their successors, all property which they held as receivers. Defendants hereto attach certified copies of said orders discharging them, marking the same exhibits A. and B. and ask that the same bet taken in connection with, and as a part of this plea.

"6th. For further plea to each count of the complaint, separately, defendant's say that plaintiff's intestate at the time of the injury which caused his death was not in discharge of his duties as yardmaster, but was performing the duties of a brakeman in coupling or uncoupling cars, and he thus proximately contributed to cause his death."

The plaintiff demurred to the defendant's 4th plea upon the following grounds: "1st. Said plea does not allege facts which show that plaintiff's letters of administration are void for want of jurisdiction in the court that granted the same. 2d. Said plea does not allege that plaintiff's intestate was a resident of the State of Alabama, at the time of his death. 3d. Said plea seeks to show that the grant of letters of adminis-

tration to plaintiff upon the estate of his intestate
was void for want of jurisdiction, and does not allege
or admit that any such letters were granted."

To the 5th plea the plaintiff demurred upon the fol-
lowing ground: "Said plea sets up as a defense the final
settlement of the trust and discharge of defendants
from the receivership, and does not allege that the mat-
ers in controversy in this case were adjusted in any
way, and it does not allege that plaintiff's claim against
defendants has been paid, or in any other way set-
eled."

To the 6th plea the plaintiff demurred upon the fol-
lowing ground: "1. The plea is no answer to the com-
plaint in this; that the complaint alleges that some of
the duties of the yardmaster were to couple and uncouple
cars, and that plaintiff's intestate was in the discharge
of his duties as yardmaster when he uncoupled said
cars." These demurrers were sustained.

The cause was tried upon issue joined upon the plea
of the general issue, and the several pleas of contribu-
tory negligence.

The evidence in the case showed that deceased at the
time of his death was 34 years old, stout, able-bodied
and in good health prior to the injury. He was a single
man. He was making at the time of his death $54 a
month. He had been known by his brother to contrib-
ute a portion of his wages on one or two occasions to
his parents. The evidence does not show how much of
the monthly income he saved, or that he saved any, nor
how much he spent on himself. The evidence is un-
disputed that deceased at the time of his death was yard
master for the Memphis & Charleston Railroad Company
at Stevenson; and there is no evidence that he was in the
employment of these appellants. Nor is there any evi-
dence that the engineer to whose negligence the kill-
ing is ascribed was defendants' employe; the evidence
tending rather to show that he was in the employment
of the company.

As to the circumstances attending the injury the evi-
dence shows the following: On the morning of the in-
jury and death, Potts, the engineer or hostler, brought
his engine with nine cars loaded with coal to the coal

chute about one mile west of Stevenson, in order to put the cars on the chute; the engine was pushing the cars, being attached to the car next to it by means of a push-bar, the front of the engine being next to the cars and the tender being toward the east. After the engine and cars reached the coal chute these cars were pushed down on the main track opposite the chute track, and beyond the switch which went up to the chute or bin. The engine was then detached and went up on the chute track and brought the cars down and by means of a running switch threw them east of the switch towards Stevenson. The engine was then coupled to the nine loaded cars by means of the push-bar, a heavy piece of iron about 5 feet long, which when not in use hung down and rested on the pilot. The three cars next to the engine were then detached from the other six, and were carried east to the switch and then pushed by the engine up on the chute track; they were uncoupled by Legg, and he went with them on the chute track. The engine then came down, and Legg also came down, to get three more cars. The rule or custom was to carry three cars up at a time. The engine then went in on the main track and was coupled to the remaining six cars. These six cars were up grade from the engine. After the engine was recoupled to these six cars, Legg went in between two of the cars—the evidence being in conflict as to whether they were the 3d and 4th or 2d and 3d cars from the engine. He uncoupled these two cars, came out and motion the engine ahead, or gave the signal to "slack off," as some of the witnesses express it. The engineer then moved off in the direction of Stevenson and stopped his engine when the two 'cars which Legg had uncoupled were from 3 to 7 feet apart. The engineer says Legg gave the signal to stop, and the other witnesses say the same thing. After the engine with the cars attached stopped, Legg went in between the cars which he had uncoupled, for some purpose which does not clearly appear, and while there the cars which he had uncoupled came together, causing injuries from which he died a few hours afterwards. He told the witness Jacobs on his way to town immediately after the injury

that he went in between these two cars to remove the
pins and link and couple the cars another way—with
the automatic coupling aparatus and Janney coupler.
One of the witnesses testified he stooped down just after
he got between the cars and picked up something, and
witness then heard him striking something, but
the cars prevented witness from seeing him or what he
was doing.  Some witnesses say Legg went between the
3d and 4th cars from the engine, and that these cars
coming together after he had uncoupled them caused
the injury.  The engineer, Potts, and other witnesses say
he went between the 2d and 3d cars.  Some of the wit-
nesses testify that after Legg went between the cars the
second time the engineer worked his lever and pushed
or drove the cars attached to the engine back towards
the remaining cars west.   Other witnesses did not see
the engine move, and ascribe the injury to the moving
or rolling of the detached cars, at the west end, down to
and against those which were attached to the engine.
The cars between which Legg was injured were equip-
ped with double buffers or bumpers, and also with au-
tomatic or patent coupling apparatus known as the
Janney coupler.   They could also be coupled with the
link and pin and when they were carried to the chute
they were coupled with the link and pin.  In order to re-
move them to the chute it was not necessary to uncouple
them, as thus coupled, and recouple them by means of
the Janney coupling.   The space between the cars was
sufficient for a man to stand between the cars, even
when they were coupled.  He could stand in between them
with safety when the cars came together, provided he
did not get his body between the coupling apparatus
itself or the bumpers on either side.   The bruises or
wounds on Legg's body showed that he was injured by
the coupling apparatus of the cars; a wound correspond-
ing to the side of the bumpers being on each side of
the center of his back.   The draw-head was between the
bumpers.   If it became necessary to loosen a pin which
had gotten tight, this could be done by reaching over the
bumpers, or by reaching under from this space and
striking up.   The engineer saw him go between the cars
after they were uncoupled and those attached to

the engine had been moved a few feet east, but did not know whether he stopped between the cars or went on through to the other side of the track, or ( if he stopped) at what place between them he did stop, or for what purpose he went between them. The deceased gave no signal to the engineer to move the engine after he signalled to stop; the engineer was subject to his order and guided by his signals. It was the engineer's duty after he received the signal, to stop and remain standing until he received a signal to move.

Among the charges requested by the defendant, to the court's refusal to give each of which the defendant separately excepted, were the following: (11.) "There is no evidence in this case that either the pin with which the cars were coupled was bent, or difficult to get out, or that the intestate was trying to get such pin out when he was injured." (12.) "If you believe from the evidence that Legg from his position on the track could have seen the cars attached to the engine coming towards him, and gotten out of their way before the bumpers came together, it was his duty to do so."

It is unnecessary to set out the many other charges requested by the defendant and refused by the court.

There were verdict and judgment for the plaintiff assessing his damages at $2,000. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

HUMES, SHEFFEY & SPEAKE, for appellant.—In a suit by a yard master whose duties required him to couple and uncouple cars, for the alleged negligence of the engineer in pushing cars back upon plaintiff after he had uncoupled said cars, the complaint should allege or show that the engineer knew he was on the track, or had knowledge or notice of facts charging him with with such knowledge.—*Bouldin's Case*, 110 Ala. 185.

In a suit by an administrator of a deceased employe, a plea is good in bar which alleges that the court of probate of the county granting the administration had no jurisdiction to do so, because the intestate at the time of his death was not an inhabitant of said county

and left no assets therein and none were afterwards brought there, and that the grant of administration is void.—*Perry v. R. R. Co.,* 29 Kans, 420; s. c. 11 Am. & Eng. R. R. Cases; *Scott v. McNeal,* 154 U. S. 34-49-50; *Bradley v. Broughton,* 34 Ala. 694, 707.

In a suit against receivers as such to recover damages for death caused by negligence of their servants, a plea since the last continuance stating that they have (since the institution of the suit) been fully and finally discharged as such receivers by the court which appointed them and have turned over or surrendered all the assets in their hands to another, the order discharging them being made a part of the plea, presents a good defense.—*Bond v. State,* 68 Miss. 652; 115 N. Y. 166; 2 McCrary, 181; 7 Fed. Rep. 537; 76 Texas 444; 42 Am. & Eng. R. R. Cases, 23; 53 Am. St. Rep. 752; 68 Ala. 564; 46 Ala. 551; 23 Am. & Eng. R. R. Cases, 501; 6 Rap. & Mack's Dig. R'y. Law, pp. 1226-7-30; High on Rec. Sec. 388b; Beach on Rec. Sec. 725, 802, pp. 773, 884; *Reynolds v. Stockston,* 140 U. S. 254.

In a suit by an employe, under sections 1749-1751 of the Code the plaintiff must prove that deceased was an employe of defendant and that one of defendant's employes was negligent, and where the suit is against receivers of a railroad company the allegations of the complaint are not sustained by proof that deceased at the time of his death was an employe of such company and that the negligence which caused the injury was negligence of the company.—Code, §§ 1749-51, and cases cited; 11 Ala. 597; *Dean v. E. T. V. & Ga. Railway Co.,* 98 Ala. 589; High on Rec'vrs. § 395, a, p. 390.

It is contributory negligence as matter of law, for a yard master to go between two sections of cars which he has just uncoupled when they are only a few feet part, an engine being attached to one section down grade from him, while the other section is up grade from him with nothing to prevent its rolling down on him; especially is this so where, for a purpose not disclosed to the engineer nor revealed by the evidence, he places his body directly between the bumpers or draw-heads of the cars in such a position that a movement of either section toward him would cause him to be caught or injured,

[McGhee *et al.* Receivers, v. Willis, Admr.]

and where he could have performed the service at the time engaged in, from a position in which his body or life would not have been endangered by such movement of the cars—*M. & C. R. R. Co. v. Graham*, 94 Ala. 545.

In such action for death of an employe only nominal damages can be recovered where evidence does not show how much of his wages deceased spent on himself or how much he saved, or how much he spent on his parents (he being single.)—*A. G. S. R. R. Co. v. Hall*, 105 Ala. 599; *Bromley v. Birmingham Min. R. R. Co.*, 95 Ala. 397; *Ala. Min. R. R. Co. v. Jones*, 114 Ala. 519; *L. & N. R. R. Co. v. Pearson*, 97 Ala. 211.

It is contributory negligence for an employe, in the performance of his work, to assume an unsafe or perilous position without necessity or reasonable cause therefor; or for him to select the less safe of two equally efficient ways of doing his work.—*Warden v. R. R. Co.* 94 Ala. 277; 9 So. Rep. 566; *Sanders v. McGhee*, 114 Ala. 373; *Davis v. W. Ry. Co.*, 107 Ala. 626.

No counsel marked as appearing for appellee.

McCLELLAN, C. J.—The integrity of plaintiff's appointment as administrator of Legg could not be collaterally questioned in this suit on the ground that the decedent was not a resident of and left no estate in Jackson county, as was attempted to be done by the 4th plea. The demurrer to the plea was properly sustained.

The 5th plea presented a good defense to the further prosecution of the action against McGhee and Fink, the sole defendants. They were sued as receivers of the Memphis & Charleston Railroad Company for damages occasioned by fatal injuries to plaintiff's intestate, alleged to have been negligently inflicted by the servants of the defendants in the operation of the railroad by them as such receivers. The plea was that since the commencement of this suit the defendants had been fully and finally discharged from their receivership by the courts which appointed them, said courts being named, and had turned over to the Southern Railway

Company, their successors, all property which they held as such receivers. By exhibits which are made part of the plea it is made to appear that the Southern Railway Company had become the purchaser of all property which defendants held as receivers at a sale, duly confirmed, made in the case in which they were appointed receivers, and that they had been discharged from all duties and liabilities as such receivers and their bonds as such surrendered to them. The action being against them solely in their official capacity as receivers—no personal fault or liability being laid against them—no judgment could be rendered against them in this action. The court erred in sustaining the demurrer to this plea. *Bond, Receiver v. Mississippi,* 68 Miss. 648, and authorities there cited; Beach on Receivers, §§ 725, 802; High on Receivers, §§ 268, 398b; 6 Rapalje & Mack's Dig. Ry. Law, pp. 1224-5; *Trust Co. v. Central Railroad,* 2 Mc-Creary, 181; *Reynolds v. Stockton,* 140 U. S. 254, 271-2.

The complaint avers that Legg, the intestate, was employed by defendants as yard master at Stevenson, and that he was required, in connection with other duties, to couple and uncouple cars, etc. As we are unable to say as matter of law that one who is yard master may not have the duty of coupling and uncoupling cars imposed upon him, and that the averments of the complaint in this connection are false, we cannot appreciate the argument made in support of the 6th plea. It was palpably a bad plea.

Upon another trial the fact that the intestate and the engineer or hostler, Potts, were in the employment of the receivers as distinguished from the railroad company of which they were receivers should be made to appear.

In no aspect of the case would it have been proper to give the affirmative charge requested by the defendant on the theory of contributory negligence proved. If Legg at the time of his injuries, was between the third and fourth cars, there is no ground for saying that his presence there was uncalled for and negligent. And being in control of the train and of the operations of it then going forward, it was, to say the least, a question for the jury whether his presence between the second

and third cars, if they found he ever was there, was negligence on his part. Moreover whether he was at the one place or the other and though he may be, for the argument, conceded to have been negligent in being between the cars at all, or at the particular spot with reference to the drawheads and bumpers which he did occupy, yet it was still open to the jury to find that the engineer was guilty of such negligence, in moving his engine or allowing it to be moved so as to bring the two parts of the train together, knowing that Legg was between them and that he had a right to assume that the engine would remain stationary while he was between them, as would impose a liability upon his employers notwithstanding any negligence on the part of Legg in being where he was.—*Central of Georgia Railway Co. v. Foshce,* 125 Ala. 199; *Tanner's Extr. v. Louisville & Nashville Railroad Co.,* 60 Ala. 621; *Louisville & Nashville Railroad Co. v. Brown,* 121 Ala. 221; *Central of Ga. R'y. Co. v. Lamb,* 124 Ala. 172.

This is not a case of dependent relations of the deceased, but one in which the jury from a consideration of the life expectancy, health, strength, earning capacity, etc., etc., of the intestate are to say what the life, if not untimely cut off, in its fullness and fruition would have been worth to distributees of his estate when death should finally come in the course of nature. The amount is not capable of definite or even approximate statement in evidence, but is to be found by the jury as best they may from all the circumstances, capacities and characteristics of the life as it existed up to the mortal injury. The evidence adduced in this case was properly submitted to the jury as supplying requisite data for the estimation of damages by them, and surely no sum awarded within that claimed in the complaint—$2,000—could be said, on the evidence, to be excessive.

We deem it unnecessary to discuss the several charges refused to defendant in this case in detail. We find no error in the rulings of the court. Most of these charges have reference to the supposed contributory negligence of Legg, and their refusal was justified by

[Bear Creek Mill Co. v. Parker.]

considerations adverted to above: They take no account of the evidence going to show that the injury resulted from Potts' negligence operating upon a *condition* merely that may have been produced by negligence of Legg, nor of the law that in such case the negligence of the injured person does not cause or contribute to the injury. Such of the refused charges as are not of the character just referred to are faulty in affirming the absence of evidence on a given point when there was evidence on it, the 11th charge for instance, or in declaring it to have been Legg's duty to watch for the running back on him of the engine and cars, when it was open to the jury to find that he had a right to assume that the engine and cars would remain stationary, the 12th charge for instance; or are abstract in respect of some fact assumed, etc., etc.

For the error committed in sustaining the demurrer to defendant's 5th plea, the judgment must be reversed. The cause is remanded.

Reversed and remanded.