PAXTON v. McCARTNEY, RECEIVER, ET AL.

[No. 14,763. Filed March 1, 1937. Rehearing denied June 16, 1937. Transfer denied September 24, 1937.]

*Featheringill & Drybread, Wray & Sullivan, Wymond J. Beckett,* and *Owen S. Boling,* for appellant.

*Othniel Hitch, Arthur K. Group, Walter Pritchard, Charles E. Henderson,* and *Laurens L. Henderson,* for appellees.

DUDINE, J.—This is an appeal from a judgment in favor of appellees, defendants below, in an action instituted by appellant for damages for personal injuries.

The complaint alleged that appellant was employed by appellee The Polk Sanitary Milk Company in the summer of 1925 to work on its dairy farm. On August 20, 1925, while he was engaged in tramping ensilage in a silo, a shovel came through with the ensilage and fell on appellant's hand thus causing the injury.

The complaint alleged further that appellee Harry McCartney, as Receiver of Sears and Nichols Canning Company, was operating a canning factory in which he was canning corn at the time of said injury. As a part of said canning process the corn was shucked in a shed and the shucks and offal were thrown or shoved into a

trench and on an endless belt conveyor, running through the trench, and carried by the conveyor to an elevator which lifted it into the silo. The complaint further alleged that proper guards were not maintained along said trench, to prevent butcher knives, shovels and other tools used at that place, in said canning process from falling into said trench and on said conveyor; that the shovel which fell upon appellant's hand was shoved onto said conveyor along with corn shocks and other refuse matter in said canning process and carried into the silo with the ensilage.

Appellees each filed an answer of general denial, and appellee receiver filed a separate paragraph of answer setting up the fact that he was appointed receiver of Sears and Nichols Canning Company on or about April 4, 1923, by the Johnson Circuit Court at Franklin, Indiana; that he qualified as such receiver and took charge of the property of said company, including said canning factory, and administered all the affairs of said trust until June 1, 1929, when he filed his report in final settlement of said trust in the Johnson Circuit Court, and that said court on the 23rd day of September, 1929, approved said report and discharged the receiver.

On change of venue the cause was submitted to a jury in the Shelby Circuit Court for trial. At the close of all the evidence, on motion of appellee receiver, the court instructed the jury to return a verdict for appellee receiver. The jury returned a verdict in favor of both appellees and the court rendered judgment in accordance with the verdict.

Appellant duly filed separate motions for new trial against each of the appellees, which motions were overruled. On appeal the errors relied upon for reversal are error in overruling each of said motions for new trial.

The causes for new trial set forth in said motion as to appellee Polk Sanitary Milk Company, which are dis-

cussed in appellant's brief, may be summarized as follows: 1. The verdict is not sustained by sufficient evidence. 2. The verdict is contrary to law. 3. Error in giving or in refusing to give each of certain instructions to the jury.

In support of his contentions that the verdict as to Polk Sanitary Milk is not sustained by sufficient evidence and is contrary to law, appellant says as follows:

"The uncontradicted evidence shows that the appellee Milk Company had in its employ at the time of the injury more than five men, that by an arrangement between it and the Canning Company the latter delivered the husks into the silo direct from the husking shed; that the Milk Company knew how the canning plant was constructed and operated and how the husks were handled; that it knew that foreign matter in addition to the husks was carried into the silo from time to time; that the dropping of any foreign matter was likely to strike any person working in the silo; that notwithstanding which it ordered and directed appellant to enter the silo and to distribute and tramp the silage as it came from the Canning Company, which order appellant was bound to and did obey; that the silo was not lighted and no means were placed on the head of the conveyor to control or keep any foreign matter from striking a workman in the silo. This undisputed evidence proves the negligence charged in the complaint and that plaintiff's injuries resulted *'in whole or in part'* from this negligence, and therefore established liability under the statute, and the verdict contrary to this evidence can not be upheld."

We deem it unnecessary to review all the evidence. It is sufficient to note that the evidence shows that the husking process, apparatus, silo and all the employees engaged in the canning process were under the control of appellee receiver; that appellee milk company had no control whatsoever over them.

Appellant contends that the Employers' Liability Act

(Acts 1911 p. 145, §40-1101 Burns 1933, §10100-1 Baldwin's 1934, is applicable here as against appellee milk company. With reference to such contention, it should be noted that appellant's injury was not caused by the negligence of a *"fellow employee"* because appellant was the only employee of appellee milk company engagd in the work; there were no "fellow employees" within the meaning of said Act. It should be further noted that appellee milk company can not be held liable on account of any defect or mismanagement of the equipment used, because the equipment was not under the control of appellee milk company.

It was not shown by uncontradicted evidence, as appellant asserts, that appellee milk company "knew that foreign matter, in addition to the husks, was carried into the silo from time to time," or "that dropping of any foreign matter was likely to strike any person working in the silo," or "that the silo was not lighted." The evidence as to those facts was conflicting.

Although we were not required to do so, we searched the record for evidence of negligence of appellee milk company which either "in whole or in part" caused appellant's alleged injury, and we have found none. In that view of the evidence, the appellee milk company is not liable under the Employers' Liability Act. The verdict of the jury in favor of appellee milk company is sustained by sufficient evidence and is not contrary to law.

The cause for new trial, which is most strenuously argued in appellant's brief, as against appellee receiver is that the court erred in giving to the jury the ██ peremptory instruction in favor of said appellee.

Appellant presents the question whether the discharge of the receiver by the Johnson Circuit Court was a bar, which prevented the Shelby Circuit Court

from rendering a valid judgment against said receiver, said receivership having been an "ancillary receivership" to a federal court receivership, which was *in fieri* at the time of the judgment.

We deem it expedient to consider at this point the relationship between primary receivers and ancillary receivers. In *Shinney* v. *North American* (1899), 97 Fed. 9, the U. S. Circuit Court (Dist. of Utah) in discussing the relationship between a primary receivership in the U. S. Circuit Court (Dist. of Utah) and an ancillary receivership in a state court of another state said (p. 11):

> "It is admitted that, when a receiver is once appointed by a federal court, other federal courts, through comity, will usually appoint the same person as the receiver of the assets within their jurisdiction; but it is argued that, where the appointment is first made by a state court, federal courts are without power to act, in conformity with the principle of comity. No reason for such a distinction is apparent. The state court is of co-ordinate jurisdiction in such matters with the federal court sitting in the same locality. As between the parties, its determination of the insolvency of the corporation and of the need for a receiver is just as conclusive as if had in a federal court. The need for a uniform administration of the assets of an insolvent corporation inheres in the principles of equity, and does not vary with the forum first invoked. It is no unusual thing for a federal court to appoint an ancillary receiver of assets within its jurisdiction in aid of a primary appointment by a state court of another state. *Sands* v. *E. S. Greeley & Co.*, 31 C. C. A. 424, 88 Fed. 130. . . ."
>
> "(An ancillary receivership) . . . Is in no sense a continuation of, or an incident to the suit in which the primary receiver was appointed. A judgment against the ancillary receiver does not bind assets beyond the jurisdiction of the court appointing him. *Reynolds* v. *Stockton*, 140 U. S. 254, 11 Sup. Ct. 773; *Johnson* v. *Powers*, 139 U. S. 156, 11 Sup. Ct. 525. 'Where a receiver, administrator, or other custodian of an estate is appointed by the courts of one state, the courts of that state reserve to

themselves full and exclusive jurisdiction over the assets of the estate, within the limits of the state.' *Reynolds* v. *Stockton, supra.* 'It rests in the discretion of the court appointing the receiver whether the assets within its jurisdiction shall be distributed under its own direction, or shall be transmitted to the primary receiver. *U. S.* v. *Coxe,* 18 How. 105.' *Sands* v. *E. S. Greeley & Co.,* 31 C. C. A. 424-426, 88 Fed. 130-133. The two proceedings are entirely independent. The need for a uniform and equitable distribution of the assets alone moves the discretion of the court of so-called "ancillary jurisdiction" to transmit them to the court of primary jurisdiction. Evidently, to insure equality among creditors, some one court must determine their rights, although the assets may be scattered through many jurisdictions. Among co-ordinate courts, the court of primary jurisdiction is selected for this purpose, not because of any paramount jurisdiction inhering in it, but because of the necessity of making some selection, and of the difficulty of formulating any principle of selection other than that of the first in time."

See *Lewis* v. *American Naval Stores Co.* (1902), 119 Fed. 391; *Security Savings and Loan Assn. et al.* v. *Moore* (1898), 151 Ind. 174, 50 N. E. 869; 53 C. J. 405, Sec. 675, to the effect that primary and ancillary receiverships are independent proceedings.

In *Reynolds* v. *Stockton* (1891), 140 U. S. 254, 11 Sup. Ct. 773, cited in *Shinney* v. *North American Savings, Loan and Building Co., supra,* Joel Parker had been appointed (primary) receiver of a New Jersey insurance company by a New Jersey court, and later was appointed ancillary receiver of the company by a New York court. He resigned as such primary receiver, and one Stockton was appointed in his stead. Later Parker was discharged as such ancillary receiver by the Supreme Court of New York. After such discharge, but while the primary receivership was still in existence, a judgment was rendered by the Supreme Court of New York against Parker as such receiver. On appeal the

U. S. Supreme Court in a discussion of the invalidity of said judgment said (p. 271) :

"At the time of the rendition of this judgment in the Supreme Court of New York, Parker had lost all authority to represent the New Jersey company. His authority in New Jersey, the state of primary administration, had been transferred to Stockton, the present receiver. By a decree in the very court, and in the very suit in the State of New York, in which he had been appointed ancillary receiver for that State, a decree had been entered discharging him from further power and responsibility. If it be said that the attention of the court in which the judgment in question was entered had not been called to this loss of representative power on the part of Parker, a sufficient reply is, that if the power was gone it is immaterial whether the court knew of it or not."

In 23 R. C. L. (p. 148) the author in his discussion of ancillary receivers says, "Where it (the court) appoints a receiver the officer becomes its officer, and is completely amenable to its control, and it matters not whether he is called an ancillary receiver or merely a receiver."

Under the authorities above cited the receivership created by the Johnson Circuit Court was state-wide and controlled property of the insolvent company located in the State of Indiana, but did not control property of the company located outside the state. The discharge of such receiver by the Johnson Circuit Court took away the power of state courts to thereafter bind the property of said company located in the state, by judgment against such receiver. Therefore we hold that the court did not commit error in giving said peremptory instruction to the jury, ordering them to render a verdict for appellee receiver.

In view of the conclusions we have reached it is not necessary that we discuss any other questions presented.

No reversible error having been shown, the judgment is affirmed in all respects.