909 F.2d 1459
 15 U.S.P.Q.2d 1554
 W. Simon KATZ, Plaintiff/Counter-Defendant/Appellant,
v.
LEAR SIEGLER, INC. and Smith & Wesson Corp.,
Defendants/Counter-Plaintiffs/Appellees,
v.
ARMAMENT SYSTEMS AND PROCEDURES, INC., Counter-Defendant.
 No. 89-1730.
 United States Court of Appeals,
Federal Circuit.
 July 25, 1990.
 
 W. Simon Katz, Buffalo, N.Y., pro se.
 Barry W. Graham, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., submitted, for defendants/counter-plaintiffs/appellees. With him on the brief, was Mary Jane Boswell. John J. Dempsey, Chapin, Neal & Dempsey, Springfield, Mass., of counsel.
 Before NEWMAN, ARCHER, and ALARCON,* Circuit Judges.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 W. Simon Katz appeals the order of the United States District Court for the Western District of Massachusetts, whereby Armament Systems and Procedures, Inc. was joined as counter-defendant in the action. Mr. Katz also appeals the district court's grant of a preliminary injunction staying the proceedings in two actions filed by him in the Western District of New York. Katz v. Lear Siegler, Inc., No. 87-0495-F (D.Mass. Aug. 18, 1989). We affirm in part and reverse in part.
 
 Background
 
 2
 In June 1986 Mr. Katz filed suit against Lear Siegler in the Western District of New York, charging infringement of Patent No. 3,758,978 entitled "Grips for Handguns", inventor Mr. Paris Theodore (the '978 patent). On Lear Siegler's motion the case was transferred, on the basis of venue, to the Western District of Massachusetts. The Federal Circuit dismissed Mr. Katz' appeal of the transfer, on the ground that absent certification in accordance with 28 U.S.C. Sec. 1292(b), change of venue is not an appealable action. Katz v. Lear Siegler, Inc., No. 87-1264 (Fed.Cir. May 13, 1987).
 
 
 3
 At Lear Siegler's request Smith & Wesson Corp., a subsidiary of Lear Siegler, was joined as codefendant and co-counter-plaintiff in the Massachusetts action, on the basis that the asserted infringing activities occurred at the Smith & Wesson plant. By declaratory judgment counterclaim, Lear Siegler brought into the suit Design Patent No. 230,400 entitled "Pistol", inventor Paris Theodore (the '400 patent).
 
 
 4
 Smith & Wesson then moved to join Armament Systems and Procedures (ASP) as a counter-defendant in the Massachusetts action, alleging that ASP is the sole possessor of the right to sue for infringement of the '978 and '400 patents. Smith & Wesson also moved the Massachusetts court to enjoin Mr. Katz from prosecuting two pending actions in the Western District of New York, one against ASP (the ASP action), and the other against Batavia Marine & Sporting Supplies, Inc. and Gun Center, Inc. (the Batavia action). Over Mr. Katz' objections the Massachusetts court granted both motions. This appeal followed.
 
 
 5
 * Mr. Katz states that ASP is neither a necessary nor a proper party to the Massachusetts action, and that the joinder of ASP constitutes reversible error. Lear Siegler argues that the district court did not abuse its discretion in granting joinder of ASP in the Massachusetts action.
 
 
 6
 An interlocutory order that ordinarily would not be appealable may be given discretionary appellate review when it is ancillary to other matters that are appealable. Intermedics Infusaid, Inc. v. Regents of Univ. of Minn., 804 F.2d 129, 134, 231 USPQ 653, 657 (Fed.Cir.1986). Consideration is given to the extent to which the appealable order involves factors pertinent to the otherwise nonappealable order, such that judicial efficiency and the interest of justice are served by review of the ancillary question. Id.
 
 
 7
 The issue of joinder of ASP in the Massachusetts action is intertwined with the merits of the injunction against continuation of the ASP action in New York. Since the grant of an injunction against continuing suit in another forum is appealable as of right, 28 U.S.C. Sec. 1292(a), we exercise our discretion in favor of review of the question of joinder.
 
 
 8
 * Joinder to a pending action of an additional party is governed by Federal Rule of Civil Procedure 19(a):
 
 
 9
 19(a). A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
 
 
 10
 Since joinder is an issue not unique to patent law, we apply the discernable law of the regional circuit, here the First Circuit. See Xeta, Inc. v. Atex, Inc., 852 F.2d 1280, 1282, 7 USPQ2d 1471, 1473 (Fed.Cir.1988). The First Circuit has not decided whether Rule 19(a) determinations by a district court are reviewed for abuse of discretion or de novo:
 
 
 11
 Although we reversed the district court's Rule 19(a) determination without making an abuse of discretion finding in Pujol v. Shearson American Express, Inc., 877 F.2d 132 (1st Cir.1989), this Circuit has never explicitly decided whether Rule 19(a) determinations by the district court are reviewable de novo or only for abuse of discretion. We see no need to decide the issue here, because we find we can affirm the district court's decision even under the de novo review standard that is more favorable to the appellants.
 
 
 12
 Traveler's Indemnity Co. v. Dingwell, 884 F.2d 629, 634 n. 10 (1st Cir.1989) (citation omitted).
 
 
 13
 As in Traveler's Indemnity, in the case at bar the de novo standard of review is more favorable to the appellant, and we have applied it.
 
 B
 
 14
 ASP first consented to joinder, and then withdrew its consent. A decision on involuntary joinder, or joinder that is opposed by a party, is "guided by pragmatic considerations, which turn on the particular facts of [the] case," Lopez v. Arraras, 606 F.2d 347, 353 (1st Cir.1979). The particular facts here concern the question of whether ASP has a sufficient interest in the patents in suit as could either defeat Mr. Katz' capacity to sue for infringement, or subject Lear Siegler/Smith & Wesson to multiple liability.
 
 
 15
 In brief summary, Mr. Katz contends that the '978 patent and the '400 patent were both assigned to him by the inventor, Mr. Paris Theodore, by assignment dated April 30, 1985, effective nunc pro tunc as of the patent issuance dates in 1973 and 1974, respectively. Lear Siegler contends that ASP possesses "the entire right, title and interest in and to any causes of action" arising from these patents, pursuant to a licensing agreement entered into in 1978 between ASP and Theodore. Mr. Katz states, inter alia, that Theodore assigned his entire interest in this agreement to Katz, that the issues as to this agreement were being resolved in the pending action between Katz and ASP in New York, and that the issue of infringement by Lear Siegler/Smith & Wesson is independent of any dispute between Katz and ASP.
 
 
 16
 The district court determined that ASP was subject to service of process in Massachusetts, and that the joinder would not defeat the jurisdiction of the Massachusetts court over the subject matter of the action. The district court also determined that ASP had an interest in the subject matter of the Massachusetts action, and that joinder of ASP was appropriate to avoid possible injury to ASP, as well as to Lear Siegler and Smith & Wesson. The court stated its intention to determine "exactly who owns the beneficial interests in the disputed letters patent", an issue predicate to Katz' capacity to bring suit for patent infringement. We agree with the district court that such determination is facilitated by joinder of ASP in the Massachusetts action. See generally United Mine Workers of America v. Gibbs, 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966) ("joinder of claims, parties and remedies is strongly encouraged.")
 
 
 17
 The ruling joining ASP as a party is affirmed.
 
 II
 
 18
 The court enjoined Mr. Katz from prosecuting both the ASP action and the Batavia action, then pending in the Western District of New York.
 
 
 19
 Applying the law of the First Circuit, the grant of an injunction is reviewed on the standard of abuse of judicial discretion. Massachusetts Ass'n of Older Americans v. Sharp, 700 F.2d 749, 751 (1st Cir.1983); Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d 1006, 1009 (1st Cir.1981). Such review includes consideration of whether the district court applied incorrect law, or misapplied the law to the facts. Hyde Park Partners, L.P. v. Connolly, 839 F.2d 837, 842 (1st Cir.1988). An injunction staying concurrent litigation is reviewed on the same standard.
 
 
 20
 Mr. Katz states that the enjoinder of concurrent litigation must meet the traditional four-part test for entitlement to a preliminary injunction, as illustrated in Planned Parenthood League, 641 F.2d at 1009:
 
 
 21
 In the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.
 
 
 22
 See also Kalman v. Berlyn Corp., 614 F.Supp. 1327, 226 USPQ 255 (D.Mass.1985) (declining to enjoin concurrent suit). However, we agree with the district court that this standard, which was developed to test the grant of the requested remedy before the case has been tried on the merits, does not apply to the different question of whether to enjoin the prosecution of concurrent litigation. In the latter case it is not controlling whether the plaintiff is likely to succeed on the merits. Instead, a primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other. Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952).
 
 
 23
 * Mr. Katz states that the matter in dispute with ASP in New York is substantially independent of that in the Massachusetts action. The New York action against ASP relates solely to the license agreement entered into between ASP and inventor Theodore. Mr. Katz states that he is the assignee of Theodore's rights under this agreement, and that the claims asserted against ASP in New York, including breach of contract, negligence, misrepresentation, and fraud, are all in connection with the agreement, its inducement, and its performance. No issue of patent infringement arises in this action.
 
 
 24
 Four patents were included in the license agreement, two of which are the '978 and the '400 patents at issue in Massachusetts. However, the contract-related claims between Katz and ASP do not appear, on the record before us, to have been raised before the Massachusetts court. While the district court correctly held, in joining ASP as a counter-defendant, that it was necessary to resolve the threshold question of Katz' capacity to sue, it appears that the major part of the controversy placed at issue in New York will not be resolved in Massachusetts.
 
 
 25
 The premise behind a decision to enjoin concurrent proceedings in another federal district court is that the proceedings involve the same parties and issues. See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir.1987) (first filed action generally preferred when identical actions are proceeding in different federal courts); National Fruit Prod. Co. v. Dwinell-Wright Co., 42 F.Supp. 1016, 1017, 52 USPQ 294, 295 (D.Mass.), aff'd, 129 F.2d 848, 54 USPQ 149 (1st Cir.1942) ("the right to relief is dependent on the determination of the same issue in each tribunal").
 
 
 26
 The district court, recognizing that there were differences in the various suits, stated that "all three suits orbit at varying distances around a common litigatory nucleus". Although we like the metaphor, it does not appear apt when the details are probed. The subject matter of the New York suit is a contract between Theodore and ASP, a contract whose provenance, performance, and disposition are all at issue in that suit, and apparently not at issue in the Massachusetts action. While the parties to the ASP (New York) action are now before the Massachusetts court, the record before us does not show potential resolution of the various issues including the asserted breaches and the various charges of fraud, negligence, and misrepresentation. No sufficient reason has been shown for delaying resolution of these matters between Katz and ASP.
 
 
 27
 The district court held that the case of Codex Corp. v. Milgo Electronics Corp., 553 F.2d 735, 194 USPQ 49 (1st Cir.), cert. denied, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977), required stay of the ASP action. Codex was a form of "customer suit". Although Codex was appropriately applied to stay the Batavia action, see Part B infra, it does not apply to ASP, for ASP is not asserted to be a customer of either Lear Siegler or Smith & Wesson.
 
 
 28
 The public policy favoring expeditious resolution of disputes is of particular weight when dealing with wasting assets such as patents. There is no good reason to unduly delay the resolution of major issues that will not be resolved in the Massachusetts action. We conclude that the Massachusetts district court exceeded its discretionary authority in enjoining the ASP action in New York. That portion of the court's order is reversed.
 
 B
 
 29
 Mr. Katz had also filed suit against Batavia Marine & Sporting Supplies, Inc., Gun Center, Inc., and R.S.R. Wholesaler Guns, Inc.[1] in the Western District of New York, asserting infringement of the '400 patent.
 
 
 30
 Lear Siegler states that Batavia Marine & Sporting Supplies and Gun Centers are customers of Smith & Wesson. Mr. Katz states that these defendants are not simply customers of Smith & Wesson, but dealers in infringing goods of several manufacturers. However, this point was not substantiated, and on the record before us this case fits the "customer suit" exception, whereby litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer. As stated in Codex:
 
 
 31
 At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit.... it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.
 
 
 32
 Codex, 553 F.2d at 737-38 (citations omitted).
 
 
 33
 Mr. Katz points out that neither of the defendants in the Batavia action has agreed to be bound by the result in Massachusetts. See Kahn v. General Motors, Inc., 889 F.2d 1078, 1082, 12 USPQ2d 1997 (Fed.Cir.1989) (considering whether the customer would be bound in declaratory judgment action by manufacturer); Refac Int'l v. IBM, 790 F.2d 79, 81, 229 USPQ 712, 713 (Fed.Cir.), modified on reh'g, 798 F.2d 459, 230 USPQ 537 (Fed.Cir.1986) (customers agreed to be bound by any injunction issued against manufacturer). However, Lear Siegler/Smith & Wesson have represented to the Massachusetts court that resolution of the major issues before that court, including patent infringement, patent validity, and Mr. Katz' capacity to sue, will resolve these issues as to their customers. The Massachusetts court's injunction against prosecution of the Batavia action, on this basis, was within the court's discretionary authority. Although there may be additional issues involving the defendants in the Batavia action, their prosecution will be advanced if Mr. Katz is successful on the major premises being litigated in Massachusetts, and may well be mooted if he is unsuccessful.
 
 
 34
 We affirm the district court's action enjoining continuation of the Batavia action pending resolution of the Massachusetts suit.
 
 III
 
 35
 Each party shall bear its costs.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 Judge Arthur Alarcon, United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 [1]
 We are told that R.S.R. Wholesaler Guns was dismissed from the action upon taking a license