# United States Court of Appeals for the Federal Circuit

---

**SPREAD SPECTRUM SCREENING LLC,**
*Plaintiff-Appellant,*

v.

**EASTMAN KODAK COMPANY, CONTINENTAL WEB PRESS, INC., GRAPHIC PARTNERS, INC., JOHNS-BYRNE COMPANY, AND GENESIS PRESS, INC**
*Defendants-Appellees.*

---

2011-1019

---

Appeal from the United States District Court for the Northern District of Illinois in Case No. 10-CV-1101, Judge Robert W. Gettleman.

---

Decided: September 26, 2011

---

CHAD ENNIS, F&B LLP, of Austin, Texas, argued for the plaintiff-appellant. With him on the brief was ADAM V. FLOYD. Of counsel was JOSEPH D. GRAY.

R. SCOTT FELDMANN, Crowell & Moring, LLP, of Irvine, California, argued for the defendants-appellees. With him on the brief were BRIAN M. KOIDE, of Washing-

ton, DC, and SCOTT L. BITTMAN, of New York, New York. Of counsel was JEFFREY D. SANOK, of Washington, DC.

―――――――――――――

Before RADER, *Chief Judge*, LOURIE and O'MALLEY, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

In this patent case, Spread Spectrum Screening LLC ("S3") filed suit in the Northern District of Illinois against Eastman Kodak Company ("Kodak") and four of Kodak's customers – Continental Web Press, Inc., Graphic Partners, Inc., Genesis Press, Inc., and Johns-Byrne Company (collectively, "the Kodak Customers") – alleging infringement of U.S. Patent No. 5,689,623 ("the '623 Patent"). On September 1, 2010, the district court granted Kodak's motion to: (1) sever the claims against it from those against the other defendants; (2) stay the action against the Kodak Customers in Illinois; and (3) transfer the case against Kodak to the Western District of New York. S3 appeals only from the portion of the order granting Kodak's motion to stay the case against the Kodak Customers pending the outcome of its action against Kodak in New York. *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, No. 10 C 1101, 2010 U.S. Dist. LEXIS 90549 (N.D. Ill. Sept. 1, 2010) ("*District Court Opinion*"). Because this appeal is not from a final judgment within the meaning of 28 U.S.C. § 1295(a)(1), and does not otherwise qualify as an appealable order, we dismiss for lack of jurisdiction.

BACKGROUND

A. Factual Background

  1. The '623 Patent

The '623 Patent – entitled "Spread Spectrum Digital Screening" – was invented by an individual named Adam Pinard and is currently assigned to S3, a patent holding company. The patent, which issued on November 18, 1997, discloses a type of screening mask that can be used in commercial printing software and includes claims drawn to a "spread spectrum digital screening mask," methods and systems for using the mask, and binary reproductions of a continuous tone image that have certain claimed characteristics.

The technology involved relates to digital "half-toning," which S3 describes as "a process used in the commercial printing industry to convert a continuous tone image, such as a photograph, into a half-tone image consisting of a pattern of minute dots that, when viewed at a suitable distance, appears to recreate the continuous tone image." Appellant's Br. 14. Newspapers, for example, are printed in half-tone.

The '623 Patent contains four sets of claims:

- Claims 1-12, which claim a digital screening mask;

- Claims 13-16, which claim methods of using the digital screening mask;

- Claim 17, which claims a system that uses the digital screening mask; and

- Claims 18-19, which claim binary reproductions having certain characteristics.

According to S3, the screening masks described in the '623 Patent result in "visually-pleasing half-tone images that [are] less susceptible to dot gain and dot loss and thus more commercially viable than the prior art." Appellant's Br. 17.

### 2.  Kodak's Staccato Software

Kodak manufactures, uses, and licenses the allegedly infringing products under the brand name Staccato.  The Kodak Customers are licensed to use the Staccato software products.  According to Kodak, it has licensed 1,621 copies of the software in the United Sates, and the Kodak Customers represent only nine (9) licenses.  Appellees' Br. 5.

Although the Kodak Customers are licensed to use the Staccato software, they are not involved in making it.  According to S3, the Kodak Customers "use Kodak's digital screening masks and systems to generate half-toned images" which are "typically etched onto a printing plate.  The plate is then installed in a printing press, which applies ink onto the plate and then rolls it onto a media, thereby transferring the image onto the media." Appellant's Br. 18.  S3 alleges that the Kodak Customers manufacture and sell their own binary reproductions "in the form of half-toned image reproductions." *Id.*

### B.  Procedural History

On February 18, 2010, S3 filed suit against Kodak and the Kodak Customers in the Northern District of Illinois alleging infringement of the '623 Patent.  S3 also named a Kodak competitor, Heidelberg U.S.A., Inc., and its customer, Hafner Printing Co., Inc., as defendants – both of which were later dismissed from the litigation.[1] In the complaint, S3 alleges that Kodak: (1) makes, uses, and sells software that directly infringes claims 1-9, 11, and 13-18 of the '623 Patent; and (2) actively induces its customers to infringe claims 1-9, 11, and 13-18 of the '623

---

[1]    S3 entered into a settlement agreement with Heidelberg and Hafner.  Pursuant to the parties' request, on September 29, 2010, the district court entered an order of dismissal with respect to those defendants.

Patent. With respect to the Kodak Customers, S3 alleges that they infringe the '623 Patent by: (1) using Kodak's infringing products; and (2) manufacturing binary reproductions that independently infringe claim 18 of the '623 Patent. Specifically, S3 alleges, the Kodak Customers directly infringe "at least claims 1-9, 11, and 13-18 of the '623 Patent by making, using, selling, and/or offering for sale infringing products and/or methods." Joint Appendix ("J.A.") 68 at ¶ 67.

Kodak and three of its Customers (Genesis, Johns-Byrne, and Graphic Partners) counterclaimed seeking declaratory judgment that the '623 Patent is invalid and not infringed. In addition, one of Kodak's Customers, Johns-Byrne, filed a cross-claim against Kodak for indemnification. In the cross-claim, Johns-Byrne alleged that it uses the Staccato product "in only one type of job, printing a white base on plastic" and that this use "amounts to perhaps 1% or 2% of Johns-Byrne's business, and can be accomplished with other software." J.A. 258 at ¶ 3.[2]

On April 29, 2010, Kodak filed a motion to: (1) sever the case against it from the other defendants; (2) transfer the case against it to the Western District of New York; and (3) stay the case against the Kodak Customers in the Northern District of Illinois. The Kodak Customers joined in Kodak's motion.

On September 1, 2010, the district court granted Kodak's motion in full. Specifically, the court: (1) severed

---

[2] At oral argument, counsel for Kodak indicated that the cross-claim has been settled and that Kodak: (1) "do[es] not have any outstanding disputes with the customers"; and (2) "is defending them all in the Western District of New York." Oral Argument at 18:52, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-1019/all.

S3's claims against Kodak from the claims against its competitor, Heidelberg, on grounds that the actions did not arise from a common transaction or occurrence; (2) severed S3's claims against Kodak from its claims against the Kodak Customers; (3) stayed the case against the Kodak Customers pending resolution of S3's case against Kodak; and (4) transferred the case against Kodak to the Western District of New York pursuant to 28 U.S.C. § 1404(a), concluding that it is a more convenient forum and that the interest of justice favored the transfer.[3]  S3 appeals only from the portion of the district court's order granting the stay.

With respect to the motion to stay, the district court found that the Kodak Customers were "merely peripheral" to the action against Kodak, would "add nothing to plaintiff's infringement action against Kodak," and were named as defendants solely to establish venue in the Northern District of Illinois.  Accordingly, the court stayed S3's action against the Kodak Customers pending the resolution of the case against Kodak in New York.  In reaching this conclusion, the court noted that, "if the

---

[3]  Pursuant to the district court's transfer order, S3's action against Kodak was transferred to Judge David Larimer in the Western District of New York.  On January 10, 2011, Kodak filed a motion to stay proceedings pending resolution of its request for reexamination to the PTO.  In Kodak's reply in support of the motion, it indicated that the PTO granted its reexamination request. On August 26, 2011, the New York court granted Kodak's motion to stay pending reexamination.  *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, No. 10-CV-6523L, 2011 U.S. Dist. LEXIS 95660 (W.D.N.Y. Aug. 26, 2011). The court noted, however, that S3 is "permitted to apply for the issuance of letters rogatory authorizing depositions of two witnesses who are Canadian citizens." *Id.* at *4. The propriety of the New York stay is not before this court.

action against Kodak proceeds and Kodak's Staccato product is found to have infringed the '623 patent, and each of Kodak's Customers are found to have used Staccato in their processes, they will also have infringed the '623 patent." *District Court Opinion*, 2010 U.S. Dist. LEXIS 90549, at *9. The court found that, because the customers "merely use" the Kodak product, "they have nothing substantive to offer during plaintiff's action against Kodak and likely do not even understand how the product software actually works and will not be helpful to determine whether Kodak's Staccato product infringes the '623 patent." *Id.*

S3 timely appealed to this court asserting jurisdiction under both 28 U.S.C. §§ 1292 and 1295.

STANDARD OF REVIEW

On matters relating to this court's jurisdiction, we apply Federal Circuit law, "not that of the regional circuit from which the case arose." *Nystrom v. Trex Co., Inc.*, 339 F.3d 1347, 1349-50 (Fed. Cir. 2003). Whether the court has jurisdiction over an appeal from a district court decision is a question of law the court reviews "in the first instance." *Pause Tech. LLC v. TiVo, Inc.*, 401 F.3d 1290, 1292 (Fed. Cir. 2005) (citing *Nystrom*, 339 F.3d at 1349-50)).

DISCUSSION

S3 argues that the stay order is a final appealable order and that the district court abused its discretion in granting the stay because its decision was based on "an incorrect finding that the Printer Defendants were mere customers of Kodak and peripheral to the litigation." Appellant's Br. 13. S3 asserts that there are three independent bases for jurisdiction in this court. First, S3 contends that the stay is appealable as a final order under

§ 1295. Second, it argues that jurisdiction is proper under the customer suit exception to the first-to-file rule discussed in *Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989). Finally, S3 argues that the stay is appealable under § 1292 because the district court effectively "issued an injunction barring S3 from proceeding against the Printer Defendants." Appellant's Br. 9.

In response, Kodak argues that this court should dismiss the case for lack of jurisdiction because: (1) the stay was not a final judgment under 28 U.S.C. § 1295, and none of the exceptions to the finality requirement applies; (2) the customer suit exception articulated in *Kahn* does not apply; and (3) the stay did not involve an injunction and thus is not appealable under 28 U.S.C. § 1292(a)(1). In the alternative, Kodak argues that, if the court finds jurisdiction, it should affirm on grounds that the district court acted within its discretion in granting the stay.

For the reasons set forth below, we find Kodak's primary arguments well-taken. Because the stay was not a final appealable order, we lack jurisdiction over S3's appeal.

A. The Stay is Not a Final Judgment Under 28 U.S.C. § 1295.

Under the "final judgment rule," parties may only appeal a "final decision of a district court." 28 U.S.C. § 1295(a)(1). A "final decision" is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945) (noting that the policy "is one against piecemeal litigation").

Here, the district court stayed S3's case against the Kodak Customers pending resolution of its case against Kodak. Because the stay does not dispose of S3's claims

against the Kodak Customers or the pending counterclaims, and therefore was not a final judgment, the court lacks jurisdiction under § 1295. S3 argues, however, that the district court's order is final because: (1) it put S3 effectively "out of federal court"; and (2) under the Supreme Court's decision in *Gillespie v. United States Steel Corp.*, 379 U.S. 148 (1964), it was "practically final." We disagree.

### 1. S3 is Not "Out of Federal Court"

Generally, a stay is not considered a final appealable order. A stay order is appealable, however, if it puts the plaintiff "effectively out of court." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983). In *Moses Cone*, the Supreme Court held that an order staying litigation in federal court pending resolution of a case in state court that would have *res judicata* effect on the federal action put the plaintiff "effectively out of court." *Id.* (noting that the stay order "amounts to a dismissal of the suit").

This court similarly has held that a stay may be an appealable order "when it effectively puts the parties out of the district court, either permanently because it terminates the action as a practical matter, or, as some courts have held, for a protracted or indefinite period." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) (citation omitted). In *Gould*, the district court granted a stay pending reexamination. *Id.* On appeal, we found that the stay was "not for such a protracted or indefinite period as to render its issuance an abuse of discretion" and that it did not terminate the action but "merely shifted to the PTO an issue (patent claim validity) involved in the dispute before the district court." *Id.* at 1341-42. In reaching this conclusion, we distinguished *Moses Cone* on grounds that a stay pending reexamina-

tion normally does "not foreclose review on the merits by a federal court." *Id.* at 1342 ("District court and PTO decisions on the merits are both reviewable by this court."). We have, however, recognized a narrow exception where such a stay "effectively disposes of the district court action." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1340 (Fed. Cir. 1998). In *Slip Track*, we found that, under the facts of that case, a stay pending the outcome of PTO reexamination proceedings was appealable because it was possible that the appellants would be unable to raise the issue of priority of invention in any forum. *Id.* (noting that, during reexamination, Slip Track could not swear behind a patent claiming the same invention and that "the district court will have no occasion to consider the issue of priority of invention following the resolution of the PTO proceeding").

Here, S3 argues that, by granting the stay, the district court "effectively dismissed the case against the Printer Defendants." According to S3, the stay "is indefinite because it will remain in limbo for an indeterminable and substantial period of years." Appellant's Reply 15. In support of this argument, S3 points to the fact that: (1) the median time to trial in the Western District of New York is almost five years; and (2) Kodak moved to stay the New York case pending reexamination, possibly delaying its day in court even further. Indeed, as noted, the New York court recently granted Kodak's motion to stay pending reexamination ("the New York stay"). Given this potentially lengthy period of time, S3 submits that the district court's order puts it "effectively out of court with respect to the Printer Defendants." Appellant's Br. 9.

In response, Kodak argues that S3's reliance on the "out of court" line of cases is misguided because those cases "only apply where a stay surrenders federal court

jurisdiction to a state court or administrative body." Appellees' Br. 15. We agree. *See Slip Track*, 159 F.3d at 1340 ("[F]ederal courts have often found jurisdiction to review stays in favor of state court suits when the state court judgment would have a fully preclusive effect on the federal action or moot the federal action entirely. Stays in favor of administrative proceedings are similarly reviewed on an 'effectively out of court' standard.") (internal citations omitted). Here, the stay does not have the effect of surrendering the federal action to state court or to an administrative body. Instead, S3 has the ability to pursue its case against Kodak in federal court in New York. And, importantly, the stay is not indefinite – the proceedings against the Kodak Customers in Illinois will resume (to the extent necessary) after the action against Kodak in New York is resolved.[4] Although the propriety of the recently granted New York stay is not before this court on appeal, it is not indefinite and does not render S3 out of federal court. *See Gould*, 705 F.2d at 1341-42 (noting that "stays to enable reexamination do not foreclose review on the merits by a federal court"). Indeed, it contemplates that discovery will proceed when the reexamination is complete and allows preparations for foreign discovery to

---

[4] At oral argument, counsel for Kodak indicated that "Kodak represented to the court that it has taken responsibility for any infringement arising out of the use of the Staccato software by its customer defendants." Oral Argument at 19:25. When asked what it means to "take responsibility" for the Kodak Customers, counsel explained that Kodak "would pay damages, defense costs." *Id.* at 19:37. Counsel for Kodak further agreed that, if Kodak loses on validity and infringement on claims 1-17 in the New York action, it will not seek to relitigate those claims in Illinois. *Id.* at 21:35. Finally, counsel explained that claim 18, which was asserted against Kodak as well as the Kodak Customers, may also be resolved in the New York action. *Id.* at 22:04.

begin. Accordingly, the New York court's decision to impose a discretionary stay pending reexamination does not alter this court's analysis with respect to S3's ability to pursue its claims in federal court.

To the extent S3 argues that the stay is indefinite due to the pace of litigation in the Western District of New York, such delay inherent in the federal court system is not the type of "protracted or indefinite" delay contemplated in *Gould*. As noted above, *Gould* was concerned with effectively foreclosing federal court jurisdiction, not with a change in the location of that jurisdiction or with orders relating to the priority of issues to be litigated in federal court on judicial efficiency grounds. Here, S3's case against Kodak was immediately transferred to another district court, not to a state court or administrative body. And, unlike the situation in *Slip Track*, where the stay meant that the appellant would never have its day in court with respect to priority issues, here, S3 has not shown that any issue will go unresolved by a federal court due to the stay.[5] *See Slip Track*, 159 F.3d at 1340. Accordingly, S3 is not cast "out of federal court."

### 2. The Stay is Not Final Under *Gillespie*.

S3 next relies upon a 1964 Supreme Court decision – *Gillespie v. United States Steel Corporation*, 379 U.S. 148 (1964) – for the proposition that the stay should be considered final. In *Gillespie*, the Court noted that, "a deci-

---

[5] Although S3 argues that the length of the stay is prejudicial, it neglects to explain how the delay would unduly prejudice its position in this case. During oral argument, counsel for S3 identified "evidentiary prejudice" as the primary harm from the stay, but conceded that the parties have an ongoing obligation to preserve evidence and that "monetary damages will still be available" to compensate S3 for any infringement. Oral Argument at 9:37.

sion 'final' within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case." 379 U.S. at 152 (citation omitted).  On the unique facts presented in *Gillespie*, which involved a wrongful death claim under the Jones Act, the Ohio wrongful death statute, and general maritime law, the Court found that immediate appellate review of an interlocutory order was permissible because the effect of the trial court's ruling, which struck certain claims from the complaint, was "fundamental to the further conduct of the case."  *Id.* at 154.  The Court noted that, "in deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'"  *Id.* at 152-53 (citation omitted).

In a subsequent decision, the Supreme Court "severely limited *Gillespie* as a basis for accepting an appeal from an interlocutory decision."  *Copelands' Enters., Inc. v. CNV, Inc.*, 887 F.2d 1065, 1068 (Fed. Cir. 1989) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 477 n.30 (1978)).  In *Coopers & Lybrand*, the Supreme Court indicated that its decision in *Gillespie*:

> upheld an exercise of appellate jurisdiction of what it considered a marginally final order that disposed of an unsettled issue of national significance because review of that issue unquestionably "implemented the same policy Congress sought to promote in § 1292(b)," and the arguable finality issue had not been presented to this Court until argument on the merits, thereby ensuring that none of the policies of judicial economy served by the finality requirement would be achieved were the case sent back with the important issue undecided.

*Coopers & Lybrand*, 437 U.S. at 477 n.30 (quoting *Gillespie,* 379 U.S. at 154). The Court further noted that, "[i]f *Gillespie* were extended beyond the unique facts of that case, § 1291 would be stripped of all significance." *Id.*

This court similarly has found that the "exception to the finality created by *Gillespie* is to be very rarely used beyond the unique facts of that case." *Fairchild Republic Co. v. United States*, 810 F.2d 1123, 1126 (Fed. Cir. 1987). Because both the Supreme Court and this court have declined to extend *Gillespie* beyond its unique facts, we will not do so here.

### B. The Court Does Not Have Jurisdiction Under the Customer Suit Exception.

S3 next argues that interlocutory review is warranted because the district court's stay order resulted from "an erroneous application of the policy favoring manufacturer suits over those against customers." Appellant's Br. 3 (citing *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989)). In *Kahn*, we recognized a customer-suit exception "to the general rule that favors the forum of the first-filed action." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). The exception provides that, in certain patent cases, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (citation omitted).

The customer suit exception "is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Kahn*, 889 F.2d at 1081 (citation omitted); *see also Katz*, 909 F.2d at 1464 (noting that "the manufacturer is the true defendant in

the customer suit" and that it "must protect its customers, either as a matter of contract, or good business, in order to avoid the damaging impact of an adverse ruling against its products") (citation omitted). As this court has noted previously, "the guiding principles in the customer suit exception cases are efficiency and judicial economy." *Tegic*, 458 F.3d at 1343. Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum.

S3 argues that jurisdiction is proper based on language in *Kahn* which states that, "[d]ecrees staying an action based on an erroneously applied customer suit exception to the rules disfavoring stays have, without more, uniformly received interlocutory review." *Kahn*, 889 F.2d at 1080. According to S3, because the district court's stay order was based on an erroneous determination that the Kodak Customers were "merely peripheral," this court has jurisdiction on appeal.

In response, Kodak argues that *Kahn* is not controlling because it: (1) found interlocutory review only under the specific facts of that case; and (2) was limited to application of Second Circuit law. For the reasons articulated below, we find that the customer suit exception, which is a narrow exception to the first-to-file doctrine, does not create jurisdiction over this appeal.

First, the procedural posture in *Kahn* differed from that presented here. In *Kahn*, this court indicated that the customer suit exception applies "where the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory judgment action brought by the manufacturer of the accused goods." *Kahn*, 889 F.2d at 1081 (citing *William Gluckin & Co., Inc. v. Int'l Playtex Corp.*, 407 F.2d 177,

178 (2d Cir. 1969)). In that case, a patent holder sued General Motors ("GM") in the Southern District of New York for infringement of a patent covering AM stereo receivers. *Id.* at 1078. Motorola, the manufacturer of integrated circuit boards used in the receivers, subsequently filed a declaratory judgment action in Illinois, seeking judgment that Kahn's patent was invalid, unenforceable, and not infringed. *Id.* GM moved to stay the New York case pending the outcome of the Illinois action. The district court granted the stay on grounds that the New York case was "merely a 'customer suit' . . . [and] that all issues would be settled in the litigation with Motorola in Illinois, as to all potential and actual infringers." *Id.* at 1079.

On appeal, this court found that the customer suit exception did not apply because the second-filed action would not completely resolve the issues between the parties. *Id.* at 1082. The court noted that, "in those cases in which a customer suit exception has been held to favor the forum of the second-filed action, the second action would resolve all charges against the customers in the stayed suit, including liability for damages." *Id.* at 1081. The court also noted that GM had "not agreed to be bound by the Illinois decision or any injunction against Motorola." *Id.* at 1082. Accordingly, we found that the district court abused its discretion in granting the stay. *Id.* at 1083. In a subsequent decision, however, we clarified that the manufacturer's case need only have the potential to resolve the "major issues" concerning the claims against the customer – not every issue – in order to justify a stay of the customer suits. *Katz*, 909 F.2d at 1464.

As occurred in *Kahn* and *Katz*, the customer suit exception typically arises when the first-filed case is an infringement action against a customer and the manufac-

turer subsequently files a declaratory judgment action against the patent holder in a different forum. That is not what happened here. Instead, this case developed as follows: (1) S3 filed its patent infringement suit in Illinois against both Kodak and the Kodak Customers; (2) Kodak filed an answer and counterclaim for declaratory judgment of invalidity and noninfringement; and (3) Kodak sought and obtained severance of the case against it and transfer to its home forum: the Western District of New York. Because Kodak did not file a separate declaratory judgment action against S3, we are not presented with a traditional first-to-file scenario, and the underlying policy considerations associated with a "race to the courthouse," such as deterring forum shopping, are not implicated. Notably, in deciding to stay the case against the Kodak Customers, the district court did not apply the customer suit exception, and instead relied on Seventh Circuit case law in finding the Kodak Customers "merely peripheral" to the litigation against Kodak. *See District Court Opinion*, 2010 U.S. Dist. LEXIS 90549, at *8 ("This court has held that such joinder of 'peripheral' defendants to prevent the transfer of an action to a more appropriate venue is improper."). Given this posture, it is unclear that the customer suit exception to the first-to-file doctrine is even at issue.

Assuming the customer suit exception could apply on this record, moreover, the pertinent language in *Kahn* is not as expansive as S3 claims. Although *Kahn* contains broad language suggesting that a stay order "based on an erroneously applied customer suit exception" always receives interlocutory review, it does not specifically identify the statute under which such jurisdiction would arise. And, although S3 argues that this language represents *Kahn*'s "jurisdictional holding," there is no indication that the language should be read so broadly. When

read in its entirety, the decision in *Kahn* focuses exclusively on cases dealing with injunctive relief, which are appealable under § 1292(a)(1), and does not create an alternate route for appellate jurisdiction.

For example, the court in *Kahn* cites to the Second Circuit's decision in *Gluckin*, where the district court granted an injunction preventing the first-filed customer suit from going forward while the second-filed manufacturer's declaratory action proceeded in another jurisdiction. *Kahn*, 889 F.2d at 1080 (citing *Gluckin*, 407 F.2d at 177-78).[6]  *Kahn* also relies on the Second Circuit's decision in *Volvo North America Corp. v. Men's International Professional Tennis Council*, 839 F.2d 69, 73 (2d Cir. 1988), which held that an order dismissing certain counts in a complaint "had the practical effect of denying injunctive relief as to th[ose] counts, and delaying litigation of [the] counts until conclusion of potentially lengthy litigation on other matters would cause irreparable harm." *Kahn*, 889 F.2d at 1079 (citing *Volvo*, 839 F.2d at 73). Applying *Volvo*, the court in *Kahn* found that "the stay of prosecution of Kahn's commercial tort claims until resolution of the Illinois action has the effect of denial of injunc-

---

[6]    In a footnote, the court in *Kahn* indicated that, "[i]n matters of jurisdictional consequence this court takes guidance from interpretations of the regional circuit in which the cause arose." 889 F.2d at 1080 n.3.  As noted previously, however, we have since clarified that, "[o]n matters relating to this court's jurisdiction, we apply Federal Circuit law, not that of the regional circuit from which the case arose." *Pause Tech.*, 401 F.3d at 1292; *see also Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 844 (Fed. Cir. 1987) (en banc) (noting that deference to regional circuit law "is inappropriate on issues of our own appellate jurisdiction" and that "our decision to follow another circuit's interpretation of a common jurisdictional statute results from the persuasiveness of its analysis, not any binding effect").

tive relief as to these claims, and leaves him without a remedy." *Id.* Specifically, the court found that interlocutory review of the stay order was warranted in large part because "Kahn state[d] that by the time the Illinois action is over his business will be dead," and thus the stay could have "serious, perhaps irreparable consequence[s]." *Id.* at 1079-80. The decision in *Kahn* is, thus, a narrow one with limited application.

The record before us does not fit within the rule of *Kahn*. As noted, *Kahn* was primarily concerned with injunctive relief, which is not at issue here. S3 did not seek a preliminary injunction, and there is no evidence that it will suffer irreparable harm stemming from the stay since it is not competing with Kodak and has pointed to no loss of business that could not be accounted for with money damages. And, unlike in *Kahn*, S3 is not being deprived of its ability to pursue claims in federal court – S3 will be able to pursue its central claims in New York after the stay pending reexamination is lifted. Accordingly, the customer suit exception does not justify our exercise of jurisdiction in this action.

C.  Because the Stay Did Not Involve an Injunction, There is No Jurisdiction Under 28 U.S.C. § 1292(a)(1).

Finally, S3 argues that this court has jurisdiction under 28 U.S.C. § 1292(a)(1), which provides that interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions" are appealable. According to S3, it should be permitted to appeal the stay order because it "is effectively an injunction barring S3 from pursuing its case against the Printer Defendants." Appellant's Br. 10. In making this argument, S3 relies on *Katz* for the proposition that "a grant of an injunction against continuing suit in another forum is appealable as of right" under § 1292.

*Id.* at 9 (quoting *Katz*, 909 F.2d at 1461).  It argues that "the stay order has the practical effect of barring S3 from filing suit against any printer that happens to use Kodak's software or hardware in any forum – even though they independently infringe the patent-in-suit by manufacturing and selling their own infringing products." *Id.* at 10.  As such, S3 submits, it has been effectively enjoined from suing any printers in any forum.  We are not persuaded by S3's arguments.

As Kodak correctly notes, "[w]hile it is true that the stay temporarily suspends the case against the Kodak Customers during the case against Kodak, the same can be said about every stay that is issued by any court." Appellees' Br. 25.  If every stay qualified as an injunction, *all* stays would be immediately appealable under § 1292(a)(1).  Moreover, the Supreme Court has made clear that "a litigant must show more than that the order has the practical effect of [granting or] refusing an injunction" for an interlocutory order to be immediately appealable. *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1980).  And, as Kodak points out, this case is distinguishable from the facts presented in *Katz*.  In *Katz*, a Massachusetts federal court issued an injunction preventing the plaintiff "from prosecuting two pending actions in the Western District of New York."  909 F.2d at 1461.[7]  In

---

[7]    With respect to one of the New York actions, we reversed the district court's order granting injunctive relief on grounds that "[t]here is no good reason to unduly delay the resolution of major issues that will not be resolved in the Massachusetts action." *Katz*, 909 F.2d at 1464.  With respect to the other suit ("the Batavia action"), we affirmed the district court's decision enjoining the case pending resolution of the Massachusetts action. *Id.*  The court found that, "[a]lthough there may be additional issues involving the defendants in the Batavia action, their prosecution will be advanced if Mr. Katz is

contrast, here, the district court stayed its *own* case and did not affirmatively prohibit litigation in any other court. Because the district court's order did not involve an injunction, we do not have jurisdiction under § 1292(a)(1).

CONCLUSION

For the foregoing reasons, and because we find that S3's remaining arguments are without merit, we conclude that this court lacks jurisdiction over this appeal. Accordingly, S3's appeal is dismissed for lack of jurisdiction.

**DISMISSED**

---

successful on the major premises being litigated in Massachusetts, and may well be mooted if he is unsuccessful." *Id.* Accordingly, the court affirmed the district court's order enjoining the Batavia action pending resolution of the Massachusetts suit. Here too, there is no dispute over the fact that resolution of the New York action will greatly narrow, if not entirely moot, the matters to be resolved in the case against the Kodak Customers in Illinois.