NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**STANLEY JOHN KIPPEN,**
*Plaintiff-Appellant,*

**v.**

**STEVEN PACK** AND
**ALLIED MATERIALS & EQUIPMENT,**
*Defendants-Appellees.*

---

2012-1259

---

Appeal from the United States District Court for the District of Utah in case no. 10-CV-0119, Chief Judge Ted Stewart.

---

Decided: August 2, 2012

---

STANLEY JOHN KIPPEN, of North Ogden, Utah, pro se.

TERRY E. WELCH, Parr Brown Gee & Loveless, of Salt Lake City, Utah, for defendants-appellees.

---

Before NEWMAN, CLEVENGER, and BRYSON, *Circuit Judges.*

CLEVENGER, *Circuit Judge*.

This appeal concerns a failed business venture to market and sell toy gliders, and an inventor's attempt to have his licensee held liable for patent infringement. The district court granted summary judgment of noninfringement, and we affirm. We vacate, however, the district court's corollary entry of judgment on contract claims that the plaintiff did not plead.

I

Plaintiff Stanley John Kippen is the inventor and owner of U.S. Patent No. 5,078,639 (issued Jan. 7, 1992) ("the '639 patent"), entitled "Model Aircraft Glider." In early 1993, Mr. Kippen (along with a partnership that he had formed called Wingers Co. ("Wingers")) entered into an agreement with Allied Materials and Equipment Co. ("Allied") concerning the '639 patent. *See* Am. Compl., Ex. 2 (Agreement of Jan. 9, 1993), *Kippen v. Pack*, No. 1:10-cv-119 [hereinafter *Kippen*] (D. Utah Oct. 12, 2010) [hereinafter 1993 Agreement].

Under the 1993 Agreement, Allied received an exclusive license to the '639 patent. In return it agreed to make certain royalty payments and to make "best efforts" to manufacture and market gliders covered by the patent.

Time passed. Allied manufactured gliders and, with some assistance from Mr. Kippen, marketed and sold them, but Allied says that sales dropped off and by the mid 2000's sales were essentially zero.

Then, in mid-2010, Mr. Kippen filed the current lawsuit against Allied's president Steven Pack, who had signed the 1993 Agreement for Allied. Proceeding *pro se*, Mr. Kippen alleged that Allied should have paid him a substantial yearly royalty under the 1993 Agreement, but that under Mr. Pack's direction Allied had failed to meet

its obligations.  Am. Compl. ¶ 8, *Kippen* (D. Utah Oct. 12, 2010), ECF #15.  As the case evolved, Mr. Kippen also argued that Mr. Pack had deceived him in the execution of the 1993 Agreement, which Mr. Kippen claims he would not have signed but for misrepresentations by Mr. Pack.  Mr. Kippen thus accused Mr. Pack of infringing the '639 patent and owing damages.

Mr. Pack disputed any personal liability and moved that Allied and Wingers be joined.  Mr. Kippen opposed. The district court held Allied and Wingers necessary to the case due to their participation in the 1993 Agreement, and ordered them joined.  *Kippen*, 2011 WL 5574969 (D. Utah Nov. 16, 2011) [hereinafter *Joinder Order*].

Several months later, the district court entered summary judgment for Mr. Pack and Allied.  *Kippen*, 2012 WL 256563 (D. Utah Jan. 27, 2012) [hereinafter *SJ Opinion*].  The district court's opinion included four main holdings.  First, it held that section 286 of the Patent Act blocked any monetary recovery for infringement committed more than six years before Mr. Kippen filed his complaint, i.e., on or before July 29, 2004.  Second, the court granted Mr. Pack summary judgment of no infringement, noting that Mr. Kippen had failed to rebut Mr. Pack's personal declaration that he had never undertaken "any activity in my individual capacity that could be construed as infringing upon Plaintiff's patent."  Third, the court granted judgment of no infringement to Allied for two reasons: Mr. Kippen, though repeatedly citing section 261 as the cornerstone of his case, had failed to show any action contravening that statute; and there could be no infringement under any other section because Allied was licensed under the 1993 Agreement.  Fourth and finally, the court ruled that Mr. Kippen could find no relief under contract law.  Though noting that Mr. Kippen had not expressly recited a contract claim against either Allied or

Mr. Pack, the court reasoned that his infringement claim was so interwoven with the 1993 Agreement as to make judgment for the defendants on contract grounds a necessary aspect of resolving the case. *SJ Opinion*, at *4–5.

Mr. Kippen timely appealed. This court has jurisdiction over appeals from final judgments of the district courts in cases arising under the patent laws. 28 U.S.C. § 1295(a)(1).

## II

As invoking issues not unique to patent law, the joinder proceedings applied by the district court are reviewed under the law of the regional circuit. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1461 (Fed. Cir. 1990). The Tenth Circuit reviews a district court's determinations concerning whether an absent party is necessary and/or indispensable to the case for abuse of discretion. *Davis v. United States*, 192 F.3d 951, 957 (10th Cir. 1999).

This court also reviews a district court's grant of summary judgment under the law of the regional circuit. *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1230 (Fed. Cir. 2005). In the Tenth Circuit, such judgments are reviewed de novo, "employing the same legal standard applicable in the district court." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1311–12 (10th Cir. 2009). In the Tenth Circuit summary judgment is warranted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter law. "Material" facts are those that could affect the lawsuit's outcome. "Genuine" issues are those on which a rational juror could find in favor of the nonmoving party on the evidence presented. In reviewing the trial record, this court will draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adams*

*v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

III

A

First, we see no error in the district court's decision to join Allied and Winger to this case. Mr. Kippen suggests that this joinder was "not necessary," as he believes Mr. Pack is "personally liable" for infringement. Appellant Informal Br., Extended Answers [hereinafter Appellant Br.], at 5. We disagree. We see no abuse of discretion in the district court's conclusion that it would be impossible to analyze Mr. Kippen's relationship with Mr. Pack except in the light of the 1993 Agreement, and that Allied and Winger's participation was necessary to that process. *See Joinder Order*, at *2.

Mr. Kippen also points out that, under the district court's scheduling order, motions for joinder were due no later than April 29, 2011. *Kippen*, slip op. (D. Utah Feb. 10, 2011), ECF #35. Mr. Pack filed his motion—styled as a motion to join or, in the alternative, to dismiss for failure to join a necessary party—on August 8. Mr. Kippen contends that Mr. Pack's motion was too late, and that Mr. Kippen was prejudiced by the resulting late joinder insofar as it limited his ability to take necessary discovery.

Appellees' brief is silent on this issue, as is the *Joinder Order*. Nevertheless, we see no grounds for reversal. While the Scheduling Order set a deadline to "amend the pleadings or join additional parties" of April 29, 2011, the Federal Rules of Civil Procedure make clear that dismissal for failure to join a necessary party can be moved at any time up to trial. Fed. R. Civ. P. 12(h)(2). The court's *Joinder Order* reasons that Allied and Winger

were necessary parties, and we see no abuse of discretion in the court's decision to order them joined rather than dismiss the case.

We therefore affirm the district court's joinder of Allied and Winger.

## B

Second, the district court properly applied section 286 of the Patent Act in holding that Mr. Kippen could not be awarded damages for infringements occurring more than six years before the filing of this case. This case squarely fits within section 286's plain text: Congress has flatly barred any patentee from extending the damages period more than six years pre-complaint. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992).

## C

Third, we agree with the district court that Mr. Pack was entitled to summary judgment of no infringement.

Mr. Kippen's theory of liability against Mr. Pack is that Mr. Pack should be held responsible for Allied's allegedly-wrongful manufacture and sale of the disputed gliders. Mr. Kippen's brief suggests that the facts of this case merit "piercing the corporate veil" as to Mr. Pack. Appellant Br. 2. We disagree.

While its details vary from state to state, the doctrine of piercing the corporate veil generally requires a would-be piercer to prove that the corporation is the mere alter ego of some individual. *See* William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 41.28 (2012 ed.). Mere allegation will not suffice.

Mr. Kippen's allegations of malfeasance by Mr. Pack are not supported by cognizable evidence sufficient to

support a conclusion that Allied was in fact Mr. Pack's mere alter ego. To the contrary, the available evidence tends to reinforce the presumption that Allied has a practical existence separate from its president Mr. Pack. We therefore conclude that no reasonable juror could reasonably attribute Allied's actions to Mr. Pack in his individual capacity.

Nor has Mr. Kippen provided evidence that Mr. Pack in his individual capacity ever made, used, sold, offered to sell, or imported the invention of the '639 patent without proper authority. All Mr. Kippen's allegations concern actions by Allied, either outright or via Mr. Pack as its representative. For the above reasons, we agree with the district court that summary judgment of no infringement by Mr. Pack is warranted.

## D

Fourth, we agree that Allied is entitled to summary judgment of no infringement. As the *SJ Opinion* lays out, the 1993 Agreement conferred to Allied an exclusive license to the '639 patent that could, in certain circumstances, be converted into a nonexclusive license. That contract, so long as it was in force, gave Allied a right to practice the '639 patent for that patent's entire life.

Mr. Kippen suggests that the 1993 Agreement is not in force, and has not been for some time. He offers several theories, but none is supported by sufficient evidence to avoid summary judgment.

First, Mr. Kippen argues that he was fraudulently induced to sign the 1993 Agreement, and that the agreement should be void for that reason. Mr. Kippen points out that Allied, in addition to making toys, has an ordnance business that sells various armed forces materiel. Mr. Kippen says he "had reservations about mixing toys

with weapons." Appellant Br. 1. He claims that before the 1993 Agreement was executed, Mr. Pack falsely told him that Allied would exit that business, and it was on that basis alone that Mr. Kippen signed. The evidentiary record, however, does not support these allegations. It contains a letter from Mr. Pack to Mr. Kippen, dated before the 1993 Agreement, stating that "our primary business has been and remains performing as a defense contractor to various Department of Defense Agencies[.]" Ltr. to Stan Kippen fr. Steven Pack (Dec. 10, 1992), *in* Pack Decl., Ex. 3, *Kippen* (D. Utah Oct. 19, 2011), ECF #78. Mr. Kippen makes much of a following statement in the letter that Allied recently "began to diversify away from defense work," pointing to recent toy sales. But such a statement says nothing about exiting the defense contracting business, only about adding more diverse enterprises. We hold that, reading the letter as a whole, any reasonable juror would find Mr. Kippen could not have reasonably believed Allied would shutter its ordnance division.

Second, Mr. Kippen suggests that the 1993 Agreement is void because Allied failed to make required royalty payments. The evidence is, again, against him. The record contains a spreadsheet, presented by Mr. Pack as reflecting his personal knowledge, describing Allied's sales of covered products and its royalty payments to Mr. Kippen from January 2005 until the end of 2011. Wing Zinger Royalty Report, *in* Pack Decl., Ex. 6, *Kippen* (D. Utah Oct. 19, 2011), ECF #78. The spreadsheet describes yearly royalty payments to Mr. Kippen ranging from $170.91 in 2005 to zero in 2008–11, with accordingly diminishing sales (and zero sales from 2008–11). Mr. Pack also stated that, over the entire life of the 1993 Agreement Allied paid Mr. Kippen "over $40,000."

Mr. Kippen does not dispute any of these statements except to accuse Allied and Mr. Pack of imprecision and to suggest that "a full accounting of total production and sales" is necessary. Appellant Br. 2. While we are mindful of Mr. Kippen's *pro se* status, we note that in this case he had the opportunity to discover all necessary detail from both Mr. Pack and Allied and, if either failed to participate fully in such discovery, to seek relief from the district court.[1] We thus do not believe summary judgment should have been withheld in order to provide still further discovery opportunities.

Alternatively, Mr. Kippen suggests that the 1993 Agreement entitled him to yearly royalties of $26,000 irrespective of how many units Allied sold. *Id.* at 3. He says that these minimum payments were not made, and that the agreement is accordingly void. This argument misreads the 1993 Agreement, which states:

> 4. *License Fee.* Allied shall pay to Wingers Co. a license fee of 5% of the gross receipts on wholesale sales of Wingers, less a credit for returns, payable quarterly on the fifteenth day of the month following the quarter in which the sales proceeds of Wingers are received . . . .
>
> . . .
>
> 7. *Advance Royalties/Minimum Royalties.* Upon execution of this Agreement, Allied shall pay Wingers Co. the sum of $10,000.00 as an advance against royalties to become due in year three of this Agreement. The minimum aggregate royalties which shall be paid to Wingers Co. by Allied

---

[1] We recognize that Allied did not become a party until November 2011. But we see no reason why Mr. Kippen could not have pursued discovery via subpoena concerning Allied's sales and royalty payments.

by the end of year four of this agreement shall be $26,000.00. Any royalties paid by Allied to Wingers Co. in excess of $26,000.00 during years one, two, and/or three of this Agreement shall be applied to the minimum royalties due in year four.

1993 Agreement ¶¶ 4, 7. This language gave Mr. Kippen (via Wingers) a right in the first four years to total royalties equaling either 5% of Allied's four-year sales, or $26,000, whichever was greater. For the period after the end of the fourth year, Mr. Kippen was entitled to a straight royalty of 5%, with no minimum. We reject his argument to the contrary.

Because Mr. Kippen has not put forward evidence sufficient to create a material fact question as to Allied's compliance with the 1993 Agreement, we affirm the district court's grant of summary judgment that Allied's practice of the '639 patent was licensed.

E

Finally, we must vacate the district court's entry of judgment for Allied on contract claims that Mr. Kippen did not plead. While we agree that Mr. Kippen's patent claims against Allied are thoroughly interwoven with the rights and obligations set forth in the 1993 Agreement, the federal courts may not resolve claims not actually submitted for adjudication. *Osage Oil & Ref. Co. v. Cont'l Oil Co.*, 34 F.2d 585, 588 (10th Cir. 1929) ("A court is without jurisdiction to pass upon questions not submitted to it for decision."); *see also Reynolds v. Stockton*, 140 U.S. 254, 265–66 (1891).

## IV

For these reasons, the judgment of the district court is affirmed in part and vacated in part.

**AFFIRMED IN PART, VACATED IN PART**

Costs

No costs.